**WO**                                                                                            SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anibal Ortiz, | No. CV 09-1048-PHX-MHM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| D. Swenson, et al., | |
| Defendants. | |

Plaintiff Anibal Ortiz, who is confined in the Saguaro Correctional Center (SCC), a Corrections Corporation of America (CCA) facility, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend.[1] (Doc.# 1, 4.)[2] The Court subsequently dismissed Plaintiff's First Amended Complaint as illegible with leave to amend. (Doc.# 9.) Plaintiff has filed a Second Amended Complaint. (Doc.# 10.) The Court will order Defendants Cain and Burnias to answer Count I of the Second Amended Complaint and will dismiss the remaining claims and Defendants without prejudice.

---

[1] Plaintiff is in the custody of CCA pursuant to a contract with the State of Hawaii. Plaintiff previously filed another case in this district, Ortiz v. Thomas, No. CV09-0396-PHX-MHM (JRI). The complaint in that case was filed against many of the Defendants in this case on February 26, 2009. (CV 09-0396-PHX-MHM, doc.# 1.) Plaintiff lodged an amended complaint on May 14, 2009, which was subsequently filed. (Id., doc.# 12, 13.) The Magistrate Judge in that case has since issued a Report and Recommendation that Plaintiff's motion to file a second amended complaint be granted. (Id., doc.# 27.) To date, no defendant in that case has been served.

[2] "Doc.#" refers to the docket number of filings in this case.

# I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

# II. Second Amended Complaint

Plaintiff alleges six counts for sexual harassment, threats to safety, denial of access to the courts or the right to petition for redress of grievances, excessive force, retaliation, and constitutionally deficient medical care. Plaintiff sues many current or former SCC employees: Regional Director D. Swenson; Warden Todd Thomas; Assistant Wardens Jody Bradley and Ben Griego; Chief of Security Mario Lopez; Assistant Chief of Security S.

1  Meiner; Chief of Unit Management N. Carrier; Grievance Co-ordinator Juan Valenzuela;
2  Investigator S. Williamson; Unit Managers Unknown Garcia, Mike Betrus, and T. Dobson;
3  Case Managers M. Molina and A. Hannah; Captains E. Hernandez and M. Ramirez;
4  Lieutenants Roger Wallace, Unknown Samberg, and R. Reyes; Sergeants Unknown
5  Anthony, Unknown Dwight, and Unknown Dublasi; Correctional Counselors Betty Tofoya,
6  N. Clark, Unknown Madrid, Unknown Summerland, and Unknown Maccri; Correctional
7  Officers Unknown Landreth, Unknown Brinson, Unknown Cain, Unknown Burnias,
8  Unknown Solis, Unknown Lopez, Unknown Lewis, Unknown Chevidia, and Unknown
9  Magallanes; Law Librarian C. Machuca; Health Services Administrator P. Sells; Nurse
10 Practitioner Unknown Bowden; Licensed Practical Nurse L. Hoffman; Health Services
11 Supervisor Unknown Nichols; and several "John Doe" Defendants. Plaintiff seeks
12 declaratory, injunctive, compensatory, and punitive relief.

### III.    **Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

####    **A.    Doe Defendant**s

Plaintiff sues several fictitiously-named Doe Defendants, who were part of a Special Operations Response Team (SORT), but he has not specifically alleged facts to support that any particular Doe Defendant violated his constitutional rights. Generally, the use of anonymous type appellations to identify defendants is not favored. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal

or his designee to serve a summons and complaint or amended complaint upon an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff may use the discovery processes to obtain the names of the persons whom he believes violated his constitutional rights. If Plaintiff discovers the identities of these defendants through the discovery process, or otherwise, he may seek leave of the Court to amend and name these individuals.

**B.     Count II**

In Count II, Plaintiff alleges a claim for threats to his safety. Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Id.; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Farmer, 511 U.S. at 837; Redman, 942 F.2d at 1442.

Plaintiff alleges the following facts in connection with Count II: Since Plaintiff's transfer to SCC on July 17, 2007, he has been "sexually harassed" by CO Cain, who has asked to view and fondle Plaintiff's genitals and suggested that he correspond with her. (Doc.# 10 at 3.) After CO Burnias was transferred to SCC, both she and Cain began

1 interrupting Plaintiff's sleep by pounding on his door and playing "mind games" to persuade
2 him to "submit to their demands of molestation and correspondence." (Id.) In September
3 2007, Cain was assigned to the recreation yard. When Plaintiff was taken to the recreation
4 yard, Cain approached him and "began her harassment with her demands." (Id.) She had a
5 computer print-out with information about Plaintiff's conviction, which she read aloud, and
6 she had a paper with an address for her brother in Hawaii through whom she apparently
7 wanted Plaintiff to correspond. Plaintiff again declined her demands; Cain threatened to pay
8 him back in a way that he would most feel it.

9        On September 12, 2007, while Defendants Bradley and Garcia made their rounds, they
10 informed Plaintiff that he was being promoted to Segregation Housing Incentive Program
11 (SHIP) II and that they would have the forms signed by Defendant Swenson within the hour.
12 Cain overheard their comments and, after Bradley and Garcia had left, she approached
13 Plaintiff's shower stall and requested back-up on the pretext that Plaintiff had refused a direct
14 order. Plaintiff "lost good time credit to advance." (Id. at 3A.)

15        On October 14, 2007, after Plaintiff again refused the advances of Cain and Burnias,
16 Cain and Burnias refused to take Plaintiff or his cell-mate to the showers. Twenty minutes
17 later, they relented to the extent that Plaintiff's cell-mate was taken to shower. Plaintiff
18 undressed so that he could wash in his cell, when Cain and Burnias passed his cell and Cain
19 yelled, "I just saw some ass!" and pointed. (Id. at 3A.) On a third pass of Plaintiff's cell and
20 while he was nude and "soaped up," they directed Plaintiff to cuff up without allowing him
21 to dress and threatened a disciplinary charge if he refused. (Id.) They cuffed Plaintiff naked
22 and left him that way for 30 to 60 minutes with air conditioning blowing on him, while they
23 laughed at him.

24        Plaintiff told Sergeant Williams and CO Ladd that he wanted to speak to the head
25 floor officer, Lieutenant Wallace; they told Plaintiff that Wallace refused to come and that
26 he should submit a request. (Id. at 4.) Plaintiff told them about the shower incident and
27 asked them to tell Wallace about it because he wanted to file a complaint. Williams and
28 Ladd returned and told Plaintiff that Wallace did not believe Plaintiff's accusations. Plaintiff

then completed an emergency grievance and turned in a copy to Grievance Co-ordinator Valenzuela "to no avail." (Id.) Plaintiff also asked Unit Manager Garcia "to no avail." (Id.) On October 19, 2007, Plaintiff handed another copy of his emergency grievance to then-Warden Swenson, who was with Assistant Wardens Griego and Bradley, Chief of Security Lopez, Assistant Chief of Security Meiner, and Garcia. (Id.) Plaintiff was "almost instantly" pulled out of his cell and questioned about his accusations. (Id.) Plaintiff later asked Investigator Williamson about the status of the investigation, and Williamson told Plaintiff that neither video nor witnesses corroborated Plaintiff's accusations. Plaintiff also asked Valenzuela about his emergency grievance, but Valenzuela denied knowledge of the grievance. (Id.)

Plaintiff "pursued further" and on November 17, 2007, he was taken to a "surprise hearing" with Defendants Swenson, Griego, Bradley, Lopez, Meiner, Williamson, and Garcia. Swenson and Griego each told Plaintiff that if he ever wanted to get out of segregation, he should stop trying "to redress the facility and focus more on getting back to general population [and] doing his time" and Garcia asked him whether he understood "what's been said?" (Id. at 4A.)

In Count II, Plaintiff contends Defendants Swenson, Griego, Bradley, Lopez, Meiner, Williamson, Wallace, Garcia, and Valenzuela violated his right to safety based on their responses to his complaints or grievances about the shower incident involving Cain and Burnias. Plaintiff fails to allege facts to support that any of these Defendants was aware of facts giving rise to an inference of a substantial risk of serious harm posed by Cain or Burnias to Plaintiff prior to the shower incident. Further, Plaintiff acknowledges that his accusations were investigated by Williamson but no corroborating evidence found and that the Defendants met with Plaintiff about his accusations. These allegations do not support that these Defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff. Thus, Plaintiff fails to state a claim against them in Count II.

  **C.  Count III**

Plaintiff designates Count III as a denial of access to the courts by Defendants Valenzuela, Swenson, Thomas, Bradley, Griego, Lopez, Meiner, Carrier, Betrus, Garcia, Dobson, Molina, and Hannah. (Doc.# 10 at 5.) The Court construes Count III as alleging a violation of Plaintiff's right to petition for redress of grievances.

Inmates have a federal right to petition for redress of grievances and to file suit without being subjected to retaliation. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Thus, an inmate may state a federal constitutional violation where he alleges that a grievance was denied in retaliation for exercising a constitutionally-protected right, see Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), or in retaliation for filing a grievance, Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Further, although "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), the right of meaningful access to the courts extends to established prison grievance procedures. Hall, 64 F.3d at 1279; Valandingham, 866 F.2d at 1138. The "government" to which the First Amendment guarantees a right to petition for redress of grievances includes prison authorities. Hall, 64 F.3d at 1279 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989)).

In Count III, Plaintiff asserts that since his arrival on July 17, 2007, he has filed various grievances regarding medical care, legal assistance, property, educational programs, grievance process, threats to health and safety, excessive force, sexual assault/harassment, discrimination, mail, conditions of confinement, and retaliation, but that the cited Defendants failed to comply with SCC grievance procedures and process. The failure to comply with prison grievance procedures is not sufficient to state a claim for denial of the right to petition for redress of grievances and Plaintiff does not allege facts to support that he was denied access to the prison grievance process, including when, where, how, and by whom. Accordingly, Count III fails to state a claim and will be dismissed.

**D.   Count IV (in part)**

In Count IV (in part), Plaintiff alleges a claim for the excessive use of force. The Eighth Amendment applies to excessive force claims of convicted inmates. See Hudson v.

McMillian, 503 U.S. 1, 7 (1992); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Officials acting under color of state law may not maliciously and sadistically use force for the purpose of causing harm. Hudson, 503 U.S. at 7; Watts v. McKinney, 394 F.3d 710, 711 (9th Cir. 2005). To state a claim for excessive force, an detainee must allege facts to support that an official used or caused to be used objectively unreasonable force against him. See Brosseau v. Haugen, 543 U.S. 194, 197 (2004). Analysis of an excessive force claim requires "balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interest at stake' to determine whether the use of force was objectively reasonable under the circumstances." Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (citations omitted); see also Graham, 490 U.S. at 395.

Plaintiff alleges the following facts in support of his excessive force claim: On March 20, 2009, Plaintiff returned to his cell from recreation to find that all of his property had been confiscated by Tofoya, Hildago, and Betrus; Plaintiff then "expressed his political beliefs as he announced their violations of his rights." (Doc.# 10 at 6.) The Team Management of Plaintiff's Unit– Betrus, Molina, Hannah, Hildago, Tofoya, and Lopez– responded by calling the SORT, which was comprised of Ramirez, Samberg, Anthony, Dwight, Lewis, Solis, and nine Doe staff members. Under the direction of Defendants Thomas, Griego, Bradley, Lopez, and Betrus, the SORT disbursed chemical agents as Plaintiff protested alone in his cell. Plaintiff submitted to restraints by Ramirez and Lopez, who left him in his cell while the chemical agents continued to circulate from which Plaintiff almost fainted. As Plaintiff was escorted to the shower, unidentified SORT members "purposely" twisted his arms, wrist, and fingers, which in turn ground the chemical agent into his skin and injured a finger. (Id.) The SORT also "purposely" held Plaintiff's head directly under the stream of water from the nozzle, causing Plaintiff to feel like he was drowning. As Plaintiff was escorted out of the pod door, he was purposely hit by SORT members on the pretext that he had attempted to resist. After he was on the ground, a SORT member told Plaintiff that he knew "where to stick his rights." (Id.)

Plaintiff fails to allege facts to support that any named Defendant used or caused to be used objectively unreasonable force against him. Plaintiff merely asserts that unspecified SORT members purposely used excessive force. As noted above, Plaintiff may seek to discover the identities of these individuals and then seek leave to amend to name them as Defendants, but he fails to state a claim for excessive use of force against any named Defendant and this portion of Count IV will be dismissed.

### E. Counts IV (in part) and VI

In Counts IV (in part) and VI, Plaintiff alleges that Defendants Hoffman and Bowden denied him constitutionally adequate medical care based on the events at issue in subsection D. To state a § 1983 medical claim, a plaintiff must allege facts to support that a defendant acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Farmer, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross

negligence will constitute deliberate indifference." Clement v. California Dep't of Corrections, 220 F. Supp.2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105-06.

In Counts IV (in part) and VI, Plaintiff alleges that Defendants Hoffman and Bowden failed to splint his finger after it was injured and that they confiscated a popsicle stick that Plaintiff obtained to be used as a splint. Plaintiff contends that the finger is now "disfigured." Even if these facts were sufficient to support that Plaintiff had a serious medical need, they are not sufficient to support that Hoffman or Bowden acted with deliberate indifference. Rather, these facts at most only establish Plaintiff's disagreement with the decision not to splint his finger. Plaintiff's mere disagreement with the course of medical treatment is not sufficient to establish deliberate indifference. Plaintiff therefore fails to state a claim against Hoffman or Bowden in Counts IV or VI.

**F.     Count V**

Plaintiff designates Count V as a claim for retaliation. To state a constitutional claim for retaliation, a plaintiff must allege that a defendant acting under color of state law took adverse action against him because he engaged in protected conduct, that the adverse action was not narrowly tailored to advance legitimate correctional goals, and that the adverse action chilled the plaintiff's exercise of his First Amendment, or other constitutional rights, or caused the prisoner to suffer more than minimal harm. Rhodes, 408 F.3d at 567-58; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate must show (1) that the prison official acted in retaliation for the exercise of a constitutionally-protected right, and (2) that the action "advanced no legitimate penological interest"). An inmate may also state a constitutional violation where he alleges that a grievance was denied

in retaliation for exercising a constitutionally-protected right, see Hall, 64 F.3d at 1279, or in retaliation for filing a grievance, Valandingham, 866 F.2d at 1138.

Although far from clear, Plaintiff appears to allege the following in support of Count V: While Plaintiff was still held at TCCF, Ms. Amos inventoried his in-cell property, but not his stored property, and told Plaintiff that another form listing his stored property would be issued to him.[3] At Plaintiff's request, Amos agreed to add the stored items to the inventory prepared by her and placed the updated list in Plaintiff's property boxes. Plaintiff was then transferred to SCC.

On July 27, 2007, at Plaintiff's property screening at SCC, the stored items, which Amos had added to the inventory list, were not included in his property boxes. Other items were also missing and most of Plaintiff's electronic items had been scratched off the list. Plaintiff showed the altered list to Defendants Bradley, Lopez, Meiner, Garcia, and Valenzuela, who attributed the missing property to Plaintiff having been in segregation and/or to Amos as the official responsible for the stored items at TCCF. (Doc.# 10 at 7.) Bradley told Plaintiff that he would allow Plaintiff to use his funds to purchase replacement items but would grant no other relief and that if Plaintiff disagreed, he could "take it to court." (Id.) Plaintiff apparently grieved the loss of his property, but received no response. Grievance Coordinator Valenzuela told Plaintiff that the issues were non-grievable.[4]

Several months later, on April 15, 2008, Plaintiff was relocated to administrative segregation without his in-cell property. (Id. at 7B, 7A.) Plaintiff was assigned to a top bunk rather than a bottom bunk, which he asserts was retaliatory. (Id. at 7B.) On April 18, 2008,

---

[3] According to Plaintiff, some of his property was placed in storage when he was placed in Administrative Segregation on May 8, 2005.

[4] Plaintiff contends that the inability to grieve the loss of property under SCC's policies and procedures conflicts with the terms of the contract between the State of Hawaii and CCA. (Id.) Plaintiff also asserts that he was denied the right to petition for redress of grievances regarding SCC's non-compliance with the terms of the contract with the State of Hawaii and the issues raised in Plaintiff's other counts. He also asserts that he was "chilled" by Valenzuela's refusal to provide him copies of his grievances. (Id.)

his in-cell property was "handled" by Reyes, Neph, Hernandez, Landreth, and Maccri, apparently as they inventoried it; Plaintiff subsequently found various items missing. (Id. at 7A-7B.) Plaintiff asked Captain Isin about his property, "to no avail." (Id. at 7A.) On August 31, 2008, Plaintiff sent an inmate request to Defendant Madrid apparently seeking return of his allowable property, "to no avail." (Id. at 7C.) He apparently then sent another request on October 22, 2008, to Defendant Anthony, again "to no avail." (Id.)

Plaintiff filed a complaint on February 26, 2009, in CV09-396-PHX-MHM.[5] (Id.) On March 5, 2009, Defendants Madrid and Summerland arrived at Plaintiff's cell with an "incorrect inventory list" that included only his television and two pairs of sweat pants. (Id.) They attempted to "deceive" Plaintiff by seeking his agreement that only those items were his property and to have Plaintiff authorize having the listed items sent out from the prison as non-allowable.[6] (Id.) Betrus told Plaintiff that he had to send out the property because he was in administrative segregation; Plaintiff contends under prison rules, the property had to be stored while he was in administrative segregation. (Id.) Plaintiff apparently filed a claim but Betrus denied the claim a year later because Plaintiff failed to submit receipts for the missing items. (Id. at 7B.) Plaintiff claims that his transfer to administrative segregation in July 2008 and the subsequent handling of his property were retaliatory and that Wallace, Fucsh, Hayes, Brinson, and Landreth were somehow involved. (Id.)

On March 20, 2009, Plaintiff found his property confiscated as described in Count IV. (Id.) Plaintiff contends that his property was confiscated by Betrus, Hildago, and Tofoya, without due process and in retaliation for expressing his political beliefs.[7] He also contends that he was denied "basic necessities," identified as a mattress, hygiene items, bedding, and clothing, for a week without first having a disciplinary proceeding and was sanctioned

---

[5] See n. 1, supra.

[6] Plaintiff contends the items were allowable under SCC rules.

[7] Hildago is not named as a Defendant.

"again" at a subsequent disciplinary hearing, which Plaintiff attributes to Defendants Bradley, Betrus, and Lopez, with authorization from Thomas. (Id.)

On May 9, 2009, Plaintiff was "threatened" by Griego and Betrus. (Id. at 7C-7D.) On May 13, 2009, Defendants Griego, Lopez, Betrus, Dublasi, Anthony, Magallanes, Chevidia, Harris, Clark, and John Does were present and participated in "demolishing" the cell shared by Plaintiff and his cell-mate in an attempt to provoke Plaintiff's cell-mate into retaliating against Plaintiff and to read Plaintiff's legal work and interfere with litigation filed by Plaintiff. (Id. at 7D.)

On July 14, 2009, a few days after being restored to SHIP II status– apparently after the demotion to SHIP I status had been reversed as improper by Bradley and Dobson– Plaintiff learned that one of his sons had died on August 5, 2007. (Id. at 7B.) Although his son's mother had notified the SCC chaplain, Plaintiff had never previously received notice from his son's mother. (Id.)

Plaintiff claims that while in administrative segregation he researched how to file a complaint, "experiencing a variety of retaliation from the facility's staff for his redress as they promised when they chilled him." (Id. at 7B.) Law librarians Machuca and Whatley allegedly breached confidentiality of legal documents submitted by Plaintiff to them for copying, allegedly pursuant to a directive from Griego and Bradley, which had been approved by Thomas, and supervised by "Principal Mrs. Sell." (Id.)

Lastly, Plaintiff alleges that he received "unjustified excessive amounts" of disciplinary charges, i.e., nearly weekly, as part of the efforts of Defendants Thomas, Griego, Bradley, Lopez, Meiner, Carrier, Garcia, Betrus, and Dobson to illegitimately keep him out of general population and interfere with his access to the courts. (Id. at 7D.)

While Plaintiff alleges various acts were retaliatory, he fails to set forth facts to support that any act was taken in retaliation for his exercise of a constitutional right. Rather, Plaintiff makes vague and conclusory assertions that the cited Defendants retaliated against him. He fails to set forth facts to support that *he* had been engaged in constitutionally protected activity and/or to connect any allegedly retaliatory act by any named Defendant to

the exercise of particular constitutional rights. Plaintiff accordingly fails to state a claim for retaliation in violation of his constitutional rights and Count V will be dismissed.

**IV.　Claim for Which an Answer Will be Required**

Liberally construed, Plaintiff sufficiently alleges facts to state a claim for sexual harassment in violation of the Eighth Amendment against Defendants Cain and Burnias in Count I. Cain and Burnias will be required to respond to Count I.

**V.　Warnings**

**A.　Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

**B.　Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.　Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.　Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

1 **IT IS ORDERED:**

2     (1)      Counts II-VI and Defendants Thomas, Bradley, Griego, M. Lopez, Meiner,
3 Carrier, Valenzuela, Betrus, Reyes, Summerland, Madrid, Garcia, Anthony, Landreth,
4 Maccri, Swenson, Ramirez, Hernandez, Dobson, Samberg, Wallace, Dwight, Dublasi,
5 Hannah, Clark, Brinson, Solis, Lewis, Unknown Lopez, Chevidia, Magallenes, Williamson,
6 Bowden, Hoffman, Nichols, Molina, Sells, Machuca, Tofoya, and unknown parties are
7 **dismissed** without prejudice.

8     (2)      Defendants Cain and Burnias must answer Count I of the Second Amended
9 Complaint.

10     (3)      The Clerk of Court must send Plaintiff a service packet including the Second
11 Amended Complaint (doc.# 10), this Order, and both summons and request for waiver forms
12 for Defendants Cain and Burnias.

13     (4)      Plaintiff must complete and return the service packet to the Clerk of Court
14 within 20 days of the date of filing of this Order. The United States Marshal will not provide
15 service of process if Plaintiff fails to comply with this Order.

16     (5)      If Plaintiff does not either obtain a waiver of service of the summons or
17 complete service of the Summons and the Second Amended Complaint on a Defendant
18 within 120 days of the filing of the Complaint or within 60 days of the filing of this Order,
19 whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ.
20 P. 4(m); LRCiv 16.2(b)(2)(B)(I).

21     (6)      The United States Marshal must retain the Summons, a copy of the Second
22 Amended Complaint, and a copy of this Order for future use.

23     (7)      The United States Marshal must notify Defendants of the commencement of
24 this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
25 Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The
26 Marshal must immediately file requests for waivers that were returned as undeliverable and
27 waivers of service of the summons. If a waiver of service of summons is not returned by a
28

Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(8) **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(9) Defendant must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(10) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

/ / /

(11) This matter is referred to Magistrate Judge Jay R. Irwin pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 16th day of December, 2009.

_____
Mary H. Murguia
United States District Judge